## WERNER v. HEIN–WERNER MOTOR PARTS CORPORATION.

### No. 8179.

Circuit Court of Appeals, Seventh Circuit.

April 30, 1943.

Warren G. Wheeler and S. L. Wheeler, both of Milwaukee, Wis., for appellant.

Arthur H. Boettcher, of Chicago, Ill., and Howard W. Schuler, of Milwaukee, Wis., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

It would be a work of supererogation for us to attempt to write an opinion in this case, when the clear, concise and excellent opinion of Judge Duffy who tried the case is in the record. Since we have reached the same conclusion that Judge Duffy's opinion reaches, and for the same reasons so well stated in his opinion, we therefore adopt the opinion of Judge Duffy as the opinion of this Court and affirm the judgment.

Judge Duffy's opinion reads as follows:

"This is a patent infringement suit. Plaintiff is the owner of U. S. Letters Patent No. 2,038,974, relating to hydraulic jacks, issued April 28, 1936, upon application filed July 28, 1932. Plaintiff relies upon Claim 6. Defenses are non-infringement and invalidity.

"Claim 6 reads:

"'A hydraulic jack comprising the combination with an upright cylinder and a concentric reservoir, of a base with which said cylinder and reservoir are in liquid tight relation, a ram operative in said cylinder, a duct in said base leading directly from the bottom of said cylinder to an exterior side surface of the base and provided at an intermediate point with a valve seat shoulder, a bleed valve threaded in said duct for axial adjustment therein to and from said shoulder, a pump chamber formed in said base and opening therefrom along an axis inclined with reference to said cylinder and intermediate said cylinder and said duct, a bypass duct leading from said first mentioned duct externally of said shoulder to said reservoir, a pump plunger operative in said chamber, a high pressure duct extending from the chamber to the first mentioned duct, and a supply duct in communication with the reservoir and leading to the high pressure duct, and check valves at the junction of the supply duct with the high pressure duct whereby to control liquid urged by the plunger from said reservoir to the cylinder.'

"That this is a narrow claim, and that the elements in the combination are old, is admitted by plaintiff, but he claims that the arrangement of the old elements is new and constitutes invention.

"Plaintiff contends that before the time of patents in suit, it was common for commercial jacks to have a large number of points at which high pressure ducts were exposed at the surface of the jack and closed by plugs in which leaks frequently developed; and that the jack then manufactured by defendant had three such plugs and that leakage by reason thereof was frequent.

"Plaintiff claims to have discovered that by inclining the axis of the pump chamber downwardly toward the bottom of the ram cylinder and adjacent the reservoir, that he could concentrate the ducts and place his check valves at the junction of the supply and high pressure ducts below his pump. By placing his inclined pump intermediate the release duct and the axis of the ram cylinder, he disposed the lower end of the pump close to the concentration of the ducts. It is his contention that Claim 6 defines the combination which he achieved.

"When the plaintiff decided to utilize a removable and replaceable pump and valve structure, he conceived the idea of having an opening in the base casting for the reception of the pump unit in the plane of the ram and of the duct leading from under the ram. He utilized this opening to give access to the drill so that high pressure

ducts could be drilled from the 'inside'. This avoided the necessity of drill working from the outside the casting, leaving holes which would have to be plugged.

"He placed all three elements in one plane, that is, the axis of the ram cylinder, the axis of the pump, and the axis of the duct designated on the patent as 37 and 38. What the inventor had in mind is shown at the very beginning of his patent. After setting forth the usual features of hydraulic jacks, he states (line 14):

"'* * * My improved jack incorporates all these features but avoids serious difficulties which have been heretofore encountered because of construction requiring that the ducts leading to and from the reservoir and cylinder and pumping device be formed with a drilling device which leaves apertures in the external walls to be plugged with resultant danger of leakage.

"'I have avoided danger of leakage in my improved hydraulic jack by installing my pumping device with such relation to the cylinder and reservoir that drilling operations necessary to the forming of the ducts in my jack are performed at such angles and with such relationship to the exterior walls of the base of the jack which houses the parts that no high pressure ducts are directly accessible to the exterior walls of the jack in the completely assembled structure, and low pressure ducts are so disposed as to minimize the possibility of leakage.'

"The teachings of the patent, therefore, are, first, use of a removable pump unit with its associated valve cage and valves and, second, that the pump unit at an angle is so arranged in relation to the ram cylinder and the ducts in the base that it is intermediate the ram cylinder and the ducts below the ram, so that all of the ducts can be drilled on the one plane.

"The question is, Does the defendant's accused device infringe on Claim 6 heretofore quoted? I am of the opinion that it does not. In the defendant's device the ducts are not in the same plane. Horizontal cross drilling from the outside of the base casting forms the ball chamber thus to connect the pump and the two ducts. The cross drilling is plugged at its outer end. In defendant's device the pump chamber is not intermediate the ram cylinder and the duct leading to the underside of the ram. The pump chamber and the duct leading under the ram are in different planes and cross drilling from the outside

is necessary in order to connect them. The passageway is a high pressure passageway and it is necessary for defendant to use such manufacturing methods so that the plug will resist the pressure, and will not leak.

"There is no identity of result or substantial identity of means. In as much as I am of the opinion that no infringement is shown, it is not necessary to discuss the validity of Claim 6."